Keith M. Lundin
U.S. Bankruptcy Judge
Dated: 01/12/11



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

In re: WILLIAM D. LOVE,

      *Debtor.*

Case No. 08-04970
Chapter 7

Hon. Keith M. Lundin

WILLIAM D. LOVE,

      *Plaintiff*,

    *v.*

THOMAS S. SCOTT, Chairman, TENNESSEE
BOARD OF PROFESSIONAL RESPONSIBILITY, in
his official capacity,

      *Defendant.*

Adv. No. 09-00446

## MEMORANDUM

The issue is whether costs assessed by the Tennessee Board of Professional Responsibility during attorney disciplinary proceedings are a nondischargeable fine or penalty under 11 U.S.C. § 523(a)(7). The assessment of costs was compensation for actual pecuniary loss and was discharged in debtor's Chapter 7 case. The following are findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

1

Debtor filed Chapter 7 on June 12, 2008 and received a discharge on October 17, 2008. Among the scheduled creditors was Defendant, Tennessee Board of Professional Responsibility ("TBPR").

The parties have stipulated that Debtor owes TBPR "in excess of $24,693.66 for costs associated with the prosecution of . . . multiple hearings before the [TBPR]." The parties stipulate that the costs charge to Debtor "are the actual costs associated with the prosecution of the disciplinary action, including, but not limited to, costs for transcripts, court reporters and hearing room rental. Attorney time is also assessed. Disciplinary counsel's time is tracked by a computer program . . . and the rates charged depend on the type of work done."

The debt of TBPR arose from a series of disciplinary actions against Debtor starting in the mid-1990s, that resulted in several license suspensions and other sanctions. *See Board of Professional Responsibility v. Love*, No. M2007-00790-SC-R3-CV, slip op. (Tenn. May 12, 2008).[1] On July 28, 2005, Debtor petitioned for reinstatement of his law license. *Board of Professional Responsibility v. Love*, No. M2007-00790-SC-R3-CV, at 4. The Hearing Panel appointed by TBPR concluded that Debtor had satisfied all conditions for reinstatement in the multiple suspension orders except for payment of costs. *Board of Professional Responsibility v. Love*, No. M2007-00790-SC-R3-CV, at 4-5. The Panel recommended reinstatement subject to three conditions: 1) Debtor practice in a group or with a practice monitor for one year; 2) Debtor enter into a five year contract

---

[1] The conditions set by order of the Tennessee Supreme Court on November 23, 1998, as preconditions to reinstatement of Debtor's law license were: a) Completion of an Ethics course at a law school approved by the Board of Law Examiners; b) Completion of alcohol treatment program to be approved by the Board of Professional Responsibility; c) Demonstration of sobriety at the time of any petition for reinstatement; d) Full compliance with all restitution orders and agreements; e) Payment to the Board of Professional Responsibility of costs of $1,752.65. (Jt. Stip. at ¶ 4.)

2

with Tennessee Lawyers Assistance Program with protocols to monitor his sobriety; and, 3) Debtor reimburse TBPR for "disciplinary fees" of $9,043.07 pursuant to a payment plan agreeable to disciplinary counsel.

TBPR petitioned the Tennessee Supreme Court for certiorari. Review of the Panel's decision resulted in modification of the conditions for reinstatement including that all past due costs and fees be paid in full. *Board of Professional Responsibility v. Love*, No. M2007-00790-SC-R3-CV, at 6. After an unsuccessful motion to modify, Debtor appealed directly to the Tennessee Supreme Court. By opinion dated May 12, 2008, the Supreme Court held that under Tenn. Sup. Ct. R. 9, § 24.3, repayment in full of disciplinary costs was a condition to reinstatement.

On June 26, 2009, Debtor moved to reopen his Chapter 7 case to file this adversary proceeding against TBPR. The complaint asserts that TBPR has refused to reinstate Debtor's law license due only to Debtor's failure to pay disciplinary costs assessed prepetition. Debtor submits that TBPR's refusal is a violation of the discharge injunction in 11 U.S.C. § 524 because the cost assessments were reimbursement of pecuniary loss for purposes of § 523(a)(7) and were discharged. On cross-motions for summary judgment, Debtor relies on the language of Tennessee Supreme Court Rule 9, § 24.3 and *State Bar of California v. Taggart*, 249 F.3d 987 (9th Cir. 2001), for the conclusion that disciplinary costs are not fines or penalties but are reimbursement for actual expenses of the disciplinary system in Tennessee.

TBPR counters that the costs assessed are part of the penalty imposed upon Debtor in the disciplinary proceedings. TBPR says that repayment of fees and costs is punishment and part of the rehabilitative process under the applicable rules. Rather than reimbursing actual expenses, TBPR

3

argues that disciplinary costs are assessed "to deter future indiscretions by other lawyers and to rehabilitate" attorneys who engage in misconduct.

Following argument on summary judgment, the court invited the parties to submit briefs on the applicable Tennessee Supreme Court Rules. In particular, the court asked counsel for the TBPR whether there was any relevant history, reports or secondary discussion of the Tennessee Supreme Court Rules with respect to the assessment of disciplinary costs. No briefs were filed.

DISCUSSION

### *Dischargeability under 11 U.S.C. § 523(a)(7)*

Section 523(a)(7) excepts from discharge any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss," other than certain tax penalties. 11 U.S.C. § 523(a)(7). Nondischargeability under § 523(a)(7) requires proof of three elements: 1) a debt payable to and for the benefit of a governmental unit; 2) the debt must be in the nature of a fine, penalty or forfeiture; and 3) the debt must not be compensation for actual pecuniary loss. *See Kelly v. Robinson*, 479 U.S. 36, 50-1, 107 S Ct. 353, 93 L. Ed. 2d 216 (1986).

The parties stipulate that TBPR is a governmental unit under 11 U.S.C. § 101(27).[2] Consideration of the second and third elements must begin with *Kelly v. Robinson*, 479 U.S. 36, 107 S. Ct. 353, 93 L. Ed. 2d 216 (1986).

---

[2] Governmental unit means "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27). State-appointed attorney disciplinary boards and commissions have been uniformly classified as "governmental units" under § 101(27). *See, e.g.*, *Attorney Grievance Comm'n of Md. v. Smith (In re Smith)*, 317 B.R. 302, 306-07 (Bankr. D. Md. 2004) (collecting cases).

4

In *Kelly*, Ms. Robinson pled guilty to larceny for wrongful receipt of welfare benefits from the state of Connecticut. Robinson was placed on probation conditioned that she make restitution. *Kelly*, 479 U.S. at 39. Robinson filed bankruptcy and the State sought a determination that the restitution was nondischargeable under § 523(a)(7).[3] The bankruptcy and district courts found the restitution nondischargeable. The Second Circuit reversed concluding that the restitution award was compensation for actual pecuniary loss for purposes of § 523(a)(7).

The Supreme Court reversed, considering § 523(a)(7) "in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems." *Kelly*, 479 U.S. at 44. Justice Powell traced this focus forward, starting with the treatment of criminal judgments under the Bankruptcy Act of 1898:

> Despite clear statutory language, most courts refused to allow a discharge in bankruptcy to affect the judgment of a state criminal court. . . . This reasoning was so widely accepted by the time Congress enacted the [1978] Code that a leading commentator could state flatly that "fines and penalties are not affected by a discharge."
>
> * * *
>
> . . . Congress enacted the Code in 1978 against the background of an established judicial exception to discharge for criminal sentences, including restitution orders, an exception created in the face of a statute drafted with considerable care and specificity.
>
> * * *
>
> Our interpretation of the Code also must reflect the basis for this judicial exception, a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. . . . This Court has emphasized repeatedly "the fundamental policy against federal interference with state criminal prosecutions."
>
> * * *

---

[3] The State in *Kelly* was stuck with its § 523(a)(7) argument in no small measure because it failed to timely assert nondischargeability under the "fraud" exceptions in 11 U.S.C. § 523(a)(2) and (a)(4).

5

. . . Congress included two qualifying phrases [to dischargeability under § 523(a)(7)]; the fines must be both "to and for the benefit of a governmental unit," and "not compensation for actual pecuniary loss." Section 523(a)(7) protects traditional criminal fines, it codifies the judicially created exception to discharge for fines. . . .

. . . [N]either of the qualifying clauses in § 523(a)(7) allows the discharge of a criminal judgment that takes the form of restitution. The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. . . . Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. . . . [T]he decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant. . . . This point [was] well illustrated by the Connecticut statute [at issue in *Kelly*]. . . .

. . . [It did] not require imposition of restitution in the amount of the harm caused. Instead, it provid[ed] for a flexible remedy tailored to the defendant's situation.

Because criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, . . . restitution orders imposed in such proceedings operate 'for the benefit of' the State. . . . [T]hey are not assessed "for . . . compensation" of the victim. The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7).

In light of the strong interest of the States, the uniform construction of the old Act over three-quarters of a century, and the absence of any significant evidence that Congress intended to change the law in this area, . . . this result best effectuates the will of Congress.

*Kelly*, 479 U.S. at 45-53 (internal citations and footnotes omitted).

Despite repeated emphasis in *Kelly* on protecting state *criminal* proceedings and on respecting well-established Act precedent, with near unanimity, courts that have considered the

6

dischargeability of attorney disciplinary cost assessments have applied *Kelly* to find such costs

nondischargeable.[4]

---

[4]     *See Richmond v. New Hamp. Sup. Ct. Comm. on Prof. Conduct*, 542 F.3d 913 (1st Cir. 2008) (Costs assessed in attorney disciplinary proceedings are nondischargeable fines under § 523(a)(7). Under New Hampshire rules "'[a]ll expenses incurred by the committee and by bar counsel in the investigation and enforcement of discipline shall be paid by the New Hampshire Bar Association in the first instance but may, in whole or in part, be assessed to a disciplined attorney to the extent appropriate.' . . . The discretionary nature of New Hampshire cost assessments strongly suggests that they should be viewed as penalties. . . . [T]he New Hampshire Supreme Court has made clear that the 'appropriateness' of the costs sanction is based on the disciplined attorney's conduct. This is strong evidence that the cost assessments are being imposed as part of a sanction. . . . [T]he cost assessments imposed by the New Hampshire Supreme Court in attorney disciplinary proceedings are not similar to costs awarded to prevailing parties in civil litigation. While the latter are essentially routine, the former are quite discretionary and are intended to sanction attorney misconduct. Thus, they are 'fines' or 'penalties' within the meaning of § 523(a)(7). . . . While a cost award might 'resemble' compensation for an actual loss, 'the context in which it is imposed [might] undermine[ ] that conclusion.' . . . [W]e look to the context in which the penalty is imposed to determine whether its purpose is truly compensatory. . . . [A] civil penalty may qualify as non-dischargeable if 'the particular penalty . . . serve[s] some 'punitive' or 'rehabilitative' governmental aim, rather than a purely compensatory purpose.' . . . [C]osts assessed in New Hampshire disciplinary proceedings are not 'purely compensatory.' . . . [C]ost assessments serve both to deter attorney misconduct and to help rehabilitate wayward attorneys. Rehabilitation and deterrence are the same public functions that were at issue in *Kelly*. It is irrelevant that the cost assessment may be calculated by reference to the actual loss. . . . [T]he 'mere fact that a penal sanction is calculated by reference to actual costs does not, in and of itself, transform the penalty into compensation for pecuniary loss.' . . . [T]he Committee is not concerned with recouping its litigation costs to the degree that it is concerned with deterring unprofessional conduct."); *Commission for Lawyer Discipline v. Tindall (In re Tindall)*, Case No. 05-49642, Adv. No. 08-03359, 2009 WL 1231878 (Bankr. S.D. Tex. Apr. 29, 2009) (Under Texas Disciplinary Rules, discretionary award of attorney fees and costs is a penalty for § 523(a)(7) purposes. The award is based on factors outlined by state Disciplinary Rules. "The factors mimic factors considered in criminal matters when determining the appropriate punishment." In Texas, the disciplinary commission is funded out of the budget for the state bar, and is not dependent upon awards of attorney fees and costs in disciplinary proceedings.); *Logal v. Education Credit Management Corp. (In re Logal)*, 381 B.R. 706, 713 (Bankr. N.D. Ind. 2007) (Summarily dismissing debtor's § 523(a)(7) action, "courts in this Circuit have held that an assessment of a monetary sanction, including the costs of the proceeding, against an attorney arising out of a disciplinary action constitutes a fine, penalty or forfeiture within the meaning of § 523(a)(7)."); *Attorney Grievance Comm'n of Md. v. Smith (In re Smith)*, 317 B.R. 302 (Bankr. D. Md. 2004) (Costs assessed in disbarment proceeding, although the actual costs of the Commission in pursuing the action, constituted a penalty for purposes of § 523(a)(7). Extending *Kelly* to attorney disciplinary proceedings is a natural fit. "The ultimate goal of both criminal and attorney disciplinary proceedings is to protect the public. The imposition of sanctions and costs protect the public by restricting a lawyer's right to practice law . . . . Monetary penalties imposed against the offender, whether part of an attorney disciplinary proceeding or a criminal proceeding, promote the state's penal and rehabilitative interests. . . . [T]he primary purpose for imposing costs is penal, and not compensatory, in that an attorney's rehabilitation is encouraged through the condition to reinstatement imposed by the judgment. The mere fact that a penal sanction is calculated by reference to actual costs does not, in and of itself, transform the penalty into compensation for pecuniary loss." Further, in Maryland, the Commission is funded not by costs awarded in connection with its proceedings, but by annual assessments on attorneys generally.); *Supreme Court of Ohio v. Bertsche (In re Bertsche)*, 261 B.R. 436 (Bankr. S.D. Ohio 2000) ("Because Ohio law similarly reflects that the imposition of disciplinary costs is discretionary, this Court concludes that the costs of an Ohio disciplinary proceeding are nondischargeable pursuant to § 523(a)(7)."); *Carlson v. Attorney Registration & Disciplinary Comm'n (In re Carlson)*, 202 B.R. 946 (Bankr. N.D. Ill.1996) ("[D]isciplinary costs are penal in nature. Disciplinary costs are synonymous to a fine imposed as a component of a criminal sentence to be paid to the estate.' 'Restitution obligations imposed as a condition of probation in state criminal proceedings are not dischargeable.' The 'ultimate goal of both criminal proceedings and attorney disciplinary proceedings is to protect the public.' Costs are only assessed in disciplinary

7

proceedings if the attorney is actually disciplined.  The imposition of costs is only triggered by misconduct on the part of the attorney. . . . [E]ven in states where costs assessed under a state rule or statute providing costs for state bar organizations or disciplinary and registration associations, such are not compensatory because state attorney disciplinary associations receive their operating costs through the state, or through annual license registration and renewal fees.  Rules requiring disciplined attorneys to pay costs are 'primarily intended to deter attorneys from engaging in improper conduct.'"); *State Bar v. Doerr (In re Doerr)*, 185 B.R. 533 (Bankr. W.D. Mich.1995) (Costs assessed against debtor-attorney under Michigan Court Rule 9.128(A) are nondischargeable.  Michigan Rule provides: "Within 14 days of the conclusion of a hearing before a panel, the grievance administrator shall file with the board an itemized statement of the commission's expenses allocable to the hearing. Copies shall be served upon the respondent and the panel. An itemized statement of the expenses of the board, commission and panel allocable to a hearing must be made a part of the report in all matters of discipline and reinstatement.  *The hearing panel and the board in an order for discipline* or an order granting or denying reinstatement *must direct the attorney to reimburse the State Bar of Michigan for the expenses of that hearing, review, and appeal, if any.* Reimbursement must be a condition in a reinstatement order. If the respondent fails to reimburse the State Bar of Michigan for the expenses within the time prescribed, a certified report of the nonpayment must be filed with the Supreme Court, and the State Bar of Michigan, and a copy served upon the respondent. The respondent will be suspended automatically, effective 7 days from the mailing of the certified report, and until the respondent pays the costs or the board approves a suitable plan for payment."  Court adopts the rationale of *Board of Attorneys Prof. Responsibility v. Haberman (In re Haberman)*, 137 B.R. 292, 294 (Bankr. E.D. Wis.1992), and *Betts v. Attorney Registration and Disciplinary Comm'n*, 165 B.R. 870 (N.D. Ill.), *aff'd*, 51 F.3d 275 (7th Cir. 1994) (table).  "Michigan's attorney disciplinary system is not dependent on the payment of debts for its continued operation. . . . [I]mposition of costs constitutes a penalty rather than a reimbursement for pecuniary loss."); *Betts v. Attorney Registration and Disciplinary Comm'n*, 165 B.R. 870, 874 (N.D. Ill.) (Costs imposed to reimburse Illinois Disciplinary Commission under Ill. Sup. Ct. R. 773(b) are a fine or penalty for purposes of § 523(a)(7).  The Illinois Supreme Court Rule provides: "It is the duty of a respondent to reimburse the Commission (1) for costs incurred in the investigation, hearing and review of matters brought pursuant to article VII of these rules *which result in the imposition of discipline,* (2) for costs involved in the investigation of alleged violations of the terms and conditions of any such disciplinary order, *when such violation are later proved,* and (3) for costs involved in any proceedings for the enforcement of any rule, judgment or order of this court *which was made necessary by any act or omission on the part of the respondent,* (4) for costs incurred to compel the appearance of respondent and to transcribe respondent's testimony, when the appearance followed *respondent's failure to comply with a request from the Inquiry Board* or Administrator to provide information concerning a matter under investigation, and (5) for costs incurred to obtain copies of records from a financial institution, *when the institution's production of the records followed respondent's failure to comply* with a request from the Inquiry Board or the Administrator to provide those records."  Court did not address issue of reimbursement of actual pecuniary loss.) (emphasis in original), *aff'd*, 51 F.3d 275 (7th Cir. 1994) (table); *Board of Attorneys Prof. Responsibility v. Haberman (In re Haberman)*, 137 B.R. 292, 294 (Bankr. E.D. Wis.1992) (Under Wisconsin law, one of the available "types of authorized discipline" for attorney"misconduct" is the imposition of conditions upon reinstatement of an attorney's license to practice law. "[C]osts clearly fall[] within [this] type of discipline as one form of condition for seeking reinstatement . . . . The words 'misconduct' and 'types of discipline' as used in [the Wisconsin statute] indicate that the purpose of the rule is more akin to punishment than to compensation for actual pecuniary loss. . . . Even though assessed costs may result in reimbursement . . . compensation is not the primary objective of the rule. Rather, the rule is primarily intended to deter attorneys from engaging in improper conduct and to convey the message to attorneys and to the public alike that the practice of law is closely scrutinized in order to maintain the Bar's integrity and high standards of professional conduct. Reimbursed costs . . . do not represent any 'actual' pecuniary loss. [The Board] is not dependent upon such reimbursement. Its funding is provided from state appropriations . . . . The ultimate goal of both criminal proceedings and attorney disciplinary proceedings is to protect the public.  Sanctions imposed against an offender, whether as part of attorney disciplinary proceedings or criminal proceedings, promote the state's penal and rehabilitative interests. . . . *Kelly v. Robinson* stated that to discharge an obligation to make restitution payments would 'hamper the flexibility of state criminal judges in choosing a combination of imprisonment, fines and restitution most likely to further the rehabilitative and deterrent goals of state criminal court justice systems.' By the same token, if costs arising out of attorney disciplinary proceedings are declared dischargeable,

8

The maverick among decisions addressing the dischargeability of attorney disciplinary costs

is *State Bar of California v. Taggart (In re Taggart)*, 249 F.3d 987 (9th Cir. 2001). In *Taggart*, the

Ninth Circuit acknowledged the great weight of decisions declaring attorney disciplinary costs

nondischargeable under § 523(a)(7). *Taggart*, 249 F.3d at 993-94. But the Ninth Circuit looked

deeper and found those decisions "by and large, analogized the costs of attorney disciplinary

proceedings imposed on disciplined attorneys to the costs of criminal litigation imposed on convicted

defendants." *Taggart*, 249 F.3d at 993. Focusing on California law, "the structure of the statutes

imposing fees on disciplined attorneys, the existence of mandatory fees in the civil context, and the

legislative history of the statute imposing monetary sanctions on disciplined attorneys all indicate

that California does not view the assessment of costs on disciplined attorneys as penal in nature,

analogy to the criminal context is inapt." *Taggart*, 249 F.3d at 994. The route to this conclusion

deserves extended quotation:

> Two different sections of the California Business and Professional Code
> allow for the imposition of fees on disciplined attorneys. Section 6086.10 requires
> the imposition of the costs of an attorney's disciplinary proceedings on any member
> of the State Bar who is publicly reproved. Cal. Bus. & Prof. Code § 6086.10. By

it would impede [the Board's] ability to carry out its designated function."); *Florida Bar v. Cillo (In re Cillo)*, 159 B.R. 340, 342-43 (Bankr. M.D. Fla.1993) (Relying on *Haberman*, 137 B.R. 292 (Bankr. E.D. Wis. 1992), and *In re Garvin*, 84 B.R. 824 (Bankr. M.D. Fla. 1988) (costs imposed as part of criminal sentence are nondischargeable), "the costs of a disciplinary proceeding assessed by the Florida Supreme Court against the Debtor whose license to practice law had been suspended, were in the nature of a 'fine, penalty or forfeiture' payable to or for the benefit to a governmental unit, and is not compensation for actual pecuniary loss. . . . [T]he ultimate goal of both criminal and attorney disciplinary proceedings is to protect the public. Sanctions imposed against the offender, whether as part of an attorney disciplinary proceeding or a criminal proceeding, promote the state's penal and rehabilitative interests."); *In re Williams*, 158 B.R. 488, 490 (Bankr. D. Idaho 1993) (Under Idaho law, costs and expenses are awarded only in attorney disciplinary cases "where a violation of professional practice rules has been found. . . . [I]n this case the expense award is a sanction against Debtor based upon his improper conduct. Sanctions imposed in attorney disciplinary proceedings not only serve a compensatory function, but they also serve to deter attorney misconduct, and in this sense are similar to restitution obligations imposed in criminal prosecutions. It would be a poor policy indeed to suggest that an attorney could elude punishment for professional improprieties by resorting to the Bankruptcy Code.").

9

contrast, § 6086.13 permits the California Supreme Court to impose, in its discretion, a monetary sanction-in addition to any costs imposed under § 6086.10-on any State Bar member who is suspended or disbarred. *Id.* § 6086.13. A comparison of the plain language of these two sections, a comparison of cost assessment in attorney disciplinary hearings with that in civil litigation, and a review of the legislative history of §6086.13 demonstrate that while fees imposed under § 6086.13 constitute fines or penalties, those imposed under § 6086.10 do not.

First, the fees levied under § 6086.10 are denominated "costs" and are imposed to reimburse the State Bar for "actual expenses" and "reasonable costs" associated with disciplinary hearings. *Id.* §§ 6086.10(a), (b). By contrast, fees authorized by § 6086.13 are described as "monetary sanctions" and are not dependent on any expenditure by the State Bar for their imposition. All that is required is that the attorney suffer the sanction of suspension or disbarment. *Id.* § 6086.13(a). It is also noteworthy that a disciplined attorney may be excused from paying costs under § 6086.10 on the grounds of "hardship, special circumstances, or other good cause." *Id.* § 6086.10(c). No such exception exists for an attorney ordered to pay monetary sanctions under § 6086.13. *See id.* § 6086.13(e) (limiting collection of monetary sanctions to circumstances in which collection would "impair the collection of criminal penalties or civil judgments arising out of transactions connected with the discipline of the attorney"). This supports the impression that the California legislature intended monetary sanctions under § 6086.13, but not costs awards under § 6086.10, as punishment.

Second, while § 6086.10 requires disciplined attorneys to pay the costs associated with their disciplinary hearings, that section also entitles exonerated attorneys to reimbursement for the costs of defending themselves. *Id.* § 6086.10(d). Section 6086.10 is therefore analogous to a section of the California Civil Procedure Code that provides prevailing parties in civil suits the right to recover from the other party the prevailing party's costs of litigation. *See* Cal. Civ. Proc. Code §§ 1032(a)(4), (b). The California Supreme Court has noted that disciplinary proceedings before the Bar Court "are *sui generis,* neither civil nor criminal in character. . . . [These proceedings] are administrative but of a nature of their own. . . . [They] are not governed by the rules of procedure governing civil or criminal litigation." Section 6086.10 appears to import into the "sui generis" attorney disciplinary context the standard California civil principle that "prevailing parties" are entitled to recover their costs of litigation.

Finally, the legislative history of § 6086.13 makes it clear that the section was enacted in order to create the possibility of fines in the context of attorney disciplinary proceedings, which did not exist under § 6086.10. *See* Senate Committee On Judiciary, Committee Report For 1991 California Assembly Bill No. 2300 (August 11, 1992) ("[Attorney d]iscipline includes orders of reprimand

10

constituting a public or private reproval, suspension from practice, or disbarment. *Fines or similar monetary sanctions are not authorized,* though [Bus. & Prof. Code] Sec. 6086.10 requires disciplined attorneys . . . to reimburse the Bar for *costs incurred* in the disciplinary process . . . .").

*Taggart*, 249 F.3d at 991-94 (emphasis in original) (footnotes and internal case citations omitted).

*See also Schaffer v. Louisiana State Bd. of Dentistry (In re Schaffer)*, 515 F.3d 424 (5th Cir. 2008) (Conducting a *Taggart*-style analysis of a Louisiana statute that imposed costs on a dentist in disciplinary proceedings. "In permitting the assessment of costs in addition to a fine, a plain reading of the of the text suggests that the costs are not a fine, penalty, or forfeiture under § 523(a)(7).").

The California legislature reacted to *Taggart* by amending the statutes regulating attorney disciplinary proceedings. The California legislature added this new subsection:

> In addition to other monetary sanctions as may be ordered by the Supreme Court pursuant to Section 6086.13, costs imposed pursuant to this section are penalties, payable to and for the benefit of the State Bar of California, a public corporation created pursuant to Article VI of the California Constitution, to promote rehabilitation and to protect the public. This subdivision is declaratory of existing law.

CAL. BUS. & PROF. CODE § 6086(e).

The dischargeability of attorney disciplinary costs under the amended statute came before the Ninth Circuit in *State Bar of California v. Findley (In re Findley)*, 593 F.3d 1048 (9th Cir. 2010).

The *Findley* panel began its analysis of the amended statute by restating its reasoning in *Taggart*:

> First, we analyzed the § 6086.10 costs in light of § 6086.13 of the California Business and Professions Code, a separate statute authorizing discretionary "monetary sanctions" for attorney misconduct. We concluded that the statutory language of § 6086.10—which imposed "costs" for "actual expenses" and "reasonable costs"—as well as the existence of a hardship exemption under § 6086.13, but not § 6086.13, "support[ed] the impression that the California legislature intended monetary sanctions under § 6086.13, but not costs awards under § 6086.10, as punishment." Next, we considered the legislative history of § 6086.13, and determined that "the section was enacted in order to create the possibility of fines in the context of attorney disciplinary proceedings, which did not exist under

11

§ 6086.10." Finally, we observed similarities between attorney disciplinary costs imposed under § 6086.10 and the costs awarded to prevailing parties in civil litigation. Reasoning by analogy that it was "highly unlikely" that California "imposed mandatory costs in civil proceedings in order to punish losing parties or to deter them from bringing litigation," we concluded that the legislature intended for the § 6086.10 costs to serve compensatory ends.

*Findley*, 593 F.3d at 1051-52 (internal citations and footnote omitted).

The *Findley* court then held that the statutory amendments undermined the foundation of

*Taggart*:

First, § 6086.10(e) clarifies that the California legislature's intent in imposing attorney disciplinary costs was "to promote rehabilitation and to protect the public," rather than to provide compensation, as we inferred in *Taggart*.

Second, § 6086.10(e) eliminates the distinction we identified in *Taggart* between the "costs" imposed through § 6086.10 and the "sanctions" leveled through § 6086.13, by labeling attorney disciplinary costs as "penalties" imposed "[i]n addition to other monetary sanctions." The plain language of the amended provision thus strongly suggests that the California legislature disagreed with the *Taggart* court's inferences about its intent in enacting § 6086.10.

The legislative history of the provision supports this conclusion. The Enrolled Bill Report for Assembly Bill 1708, the vehicle for adding subsection (e) of the amended § 6086.10, stated:

One of these [new] provisions [in Section 6086.10] would clarify that orders to pay disciplinary costs, like the costs of prosecution imposed on criminal defendants, would be analogous to fines and not dischargeable in bankruptcy.

It further stated that:

Section 6086.10 would (1) enable the Bar to pursue orders for disciplined attorneys to pay the costs of their discipline . . . as money judgments; and (2) specify that orders to pay disciplinary costs are penalties, as originally intended by the Legislature, and therefore not dischargeable in bankruptcy.

*Id.* Finally, Lawrence Doyle, drafter of the amendment, explained in a declaration submitted for the record that:

12

Section 6086.10(e) was added to the California Business and Professions Code to expressly clarify and re-state the intent of the California Legislature that disciplinary costs are monetary sanctions and are a part of the punishment imposed on California lawyers for professional misconduct by making him or her pay for part of the costs of the proceeding.

* * *

. . . The California legislature's express statement in the 2003 amendment to § 6086.10(e) that it enacted attorney disciplinary costs to serve penal and rehabilitative ends thus undermines the result in *Taggart*.

For these reasons, we conclude that the 2003 amendments to Cal. Bus. & Prof. Code §6086.10 are sufficient to render attorney discipline costs imposed by the California State Bar Court non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(7).

*Findley*, 593 F.3d at 1052-54.

The Sixth Circuit has addressed dischargeability under § 523(a)(7) and applied the Supreme Court's rationale in *Kelly* in contexts other than attorney disciplinary costs. *See Hughes v. Sanders*, 469 F.3d 475 (6th Cir. 2006); *Tennessee v. Hollis (In re Hollis)*, 810 F.2d 106 (6th Cir. 1987) (per curiam).

*Hollis* was a criminal case and the Sixth Circuit hewed closely to *Kelly*. In *Hollis*, probation ordered by a state criminal court was conditioned that the debtor pay $408.75 in court costs. *Hollis*, 810 F.2d at 107. The Sixth Circuit held the court costs were nondischargeable:

This issue requires the Court to delve behind the apparent meaning of section 523(a)(7). The assessment of costs against appellee clearly was intended, at least in part, to compensate the State for the expense it had incurred in prosecuting appellee in state criminal court. It thus appears not to satisfy the third requirement stated above. The Supreme Court stated in *Kelly*, however, that in this kind of case a court must consider the language of section 523(a)(7) "in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems." The Supreme Court's consideration of these factors led it to conclude that "§ 523(a)(7) preserves from discharge *any* condition a state criminal court imposes as part of a criminal

sentence." It noted in support of its holding that the criminal justice system operates primarily for the benefit of society as a whole and serves to fulfill the penal goals of the State, and that unlike most debts, a financial obligation imposed as a condition of probation does not arise out of a contractual, statutory, or common law duty, but rather is based on a State's traditional penal obligations and goals.

In light of the Supreme Court's decision in *Kelly*, the issue before us here boils down to whether the state criminal court assessed costs against appellee as part of his criminal sentence. We believe that the answer to that issue is yes. The state criminal court clearly intended the assessment of costs to be a condition of appellee's probation under section 40-21-109. TENN. CODE ANN. § 40-21-109 (1982). An assessment of costs, moreover, appears to be an appropriate condition of probation under this section.

*Id.* at 108 (internal case citations omitted).

More recently, the Sixth Circuit considered the scope of § 523(a)(7) in a noncriminal context in *Hughes v. Sanders*, 469 F.3d 475 (6th Cir. 2006). In *Hughes*, the plaintiff contended that an attorney malpractice judgment entered by default as a sanction for discovery abuse was nondischargeable under § 523(a)(7). There was no dispute that the default judgment was "punitive in nature." *Hughes*, 469 F.3d at 477. The Sixth Circuit addressed two issues under § 523(a)(7): whether the judgment was payable to and for the benefit of a governmental unit; and, whether the judgment was compensation for actual pecuniary loss.

Reading *Kelly* carefully, the Sixth Circuit panel in *Hughes* first rejected the view of many other courts that the identity of the beneficiary was irrelevant to § 523(a)(7) analysis. The restitution in *Kelly* was payable to the state. The judgment in *Hughes* was payable to the victim. *See also Tennessee Bd. Prof'l Responsibility v. Brooks (In re Brooks)*, Case No. 04-15901, Adv. No. 04-1290, 2008 WL 1924040 (Bankr. E.D. Tenn. Apr. 28, 2008) (Restitution ordered paid by disciplined attorney was not payable to State and was dischargeable under rationale of *Hughes*.).

14

More importantly, even had Hughes prevailed on the element of "payable to and for the benefit of a governmental unit," the Sixth Circuit concluded he could not satisfy the requirement that the judgment not be compensation for actual pecuniary loss. "[T]he debt owed by [debtor] was a default judgment in an amount explicitly calculated to compensate Hughes for malpractice damages, litigation costs and attorney's fees. That the judgment [was] . . . entered . . . as a sanction for [debtor's] inexcusable and unprofessional conduct [did] not change the judgment's compensatory character." *Id.* at 479.

The Sixth Circuit in *Hughes* framed *Kelly* this way: "[The] *Kelly* Court's repeated rational for its determination that a criminal restitution judgment [was] not dischargeable [was] the importance of shielding the states from federal interference with the states' criminal justice systems. . . . *Kelly* applies narrowly to criminal restitution payable to a governmental unit." *Hughes*, 469 F.3d at 478-79. The Sixth Circuit repeated the admonition in *Kelly* that its interpretation of the Bankruptcy Code reflected "a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. . . . '[T]he fundamental policy against federal interference with state criminal prosecutions.' . . . [T]he States' interest in administering their criminal justice systems free from federal interference . . . ." *Kelly*, 479 U.S. at 47-49.

**Tennessee Board of Professional Responsibility and Tennessee Supreme Court Rules**

The Tennessee Supreme Court Rule mandating the assessment of costs against attorneys "[i]n the event [of] a judgment of disbarment, suspension, public censure, private reprimand, temporary suspension, disability inactive status, reinstatement, or denial of reinstatement" aligns with the

Case 3:09-ap-00446    Doc 16    Filed 01/13/11    Entered 01/13/11 08:26:12    Desc Main
Document      Page 15 of 22

statutory provisions before the Ninth Circuit in *Taggart* and before the Fifth Circuit in *Schaffer*: it is not intended as a fine or penalty, but is compensation for actual pecuniary loss.

The Tennessee Supreme Court has declared its inherent authority to regulate the practice of law. *See Doe v. Board of Prof'l Responsibility*, 104 S.W.3d 465, 469 (Tenn. 2003); *Petition of Burson*, 909 S.W.2d 768, 772 (Tenn. 1995) ("'There is no provision of the Tennessee Constitution that specifically grants the Tennessee Supreme Court the authority to regulate the practice of law. Rather, the authority derives from the doctrine of separation of powers . . . . The authority to regulate the practice of law has been described as 'inherent power' that results from the Court's position in the judicial branch of government.'") (internal citations omitted).

In 1976, the Tennessee Supreme Court created disciplinary rules and established the Board of Professional Responsibility (then known as the Disciplinary Board of the Supreme Court of Tennessee) to enforce those rules. *See* www.tbpr.org; *see also In re Petition of the Tennessee Bar Ass'n*, 532 S.W.2d 224 (Tenn. 1975). "In furtherance of [its] duty to regulate the practice of law in Tennessee . . . when appropriate, [the Tennessee Supreme Court may] discipline attorneys who violate the rules governing the legal profession." *Doe*, 104 S.W.3d at 470.

Rule 9 of the Tennessee Supreme Court Rules addresses discipline of lawyers. Section 4 of Rule 9, is entitled "Types of Discipline." The types of discipline available to TBPR in the event of misconduct are disbarment (§ 4.1), suspension (§ 4.2), temporary suspension (§ 4.3), public censure (§ 4.4), private reprimand (§ 4.6), private informal admonition (§ 4.6), or restitution (§ 4.7). Restitution may be ordered in addition to any other type of discipline. SUP. CT. TENN. R. 9, § 4.7 (Restitution was specifically added as an additional form of discipline by amendment effective July 1, 2006.)

Several sections of Rule 9 mandate the assessment of costs against an attorney subject to

TBPR proceedings. Section 24 of Rule 9—entitled "Expenses, Audit, Reimbursement of

Costs"—provides:

> 24.1. Expenses. The salaries of Disciplinary Counsel and staff, their expenses, administrative costs, and the expenses of the members of the Board and of members of the district committees shall be paid by the Board out of the funds collected under the provisions of Rule 9.

> *24.3. Reimbursement of Costs. In the event that a judgment of disbarment, suspension, public censure, private reprimand, temporary suspension, disability inactive status, reinstatement, or denial of reinstatement* results from formal proceedings, the Board *shall assess against the respondent the costs of the proceedings*, including court reporter's expenses for appearances and transcription of all hearings and depositions, the expenses of the hearing panel in the hearing of the cause, and the hourly charge of Disciplinary Counsel in investigating and prosecuting the matter.

> The respondent attorney may petition the Board for relief from costs within thirty days of receipt of the final bill of costs or on the termination of any action upon which the disciplinary proceeding was based, whichever occurs last. . . .

> The hourly charges of Disciplinary Counsel on formal proceedings filed prior to January 27, 1992, shall be assessed at $20 per hour for investigative time and $30 per hour for trial time. The hourly charges of Disciplinary Counsel on formal proceedings filed on or after January 27, 1992, shall be assessed at $30 per hour for investigative time incurred prior to the filing of formal proceedings and $80 per hour in connection with formal proceedings.

> *Payment of the costs assessed by the Board pursuant to this rule shall be required as a condition precedent to reinstatement of the respondent attorney.*

17

Sᴜᴘ. Cᴛ. Tᴇɴɴ. R. 24 (emphasis added).[5]   The Tennessee Supreme Court has recognized the

mandatory nature of costs under this Rule. *Walker v. Board of Prof'l Responsibility*, 38 S.W.3d 540,

549 (Tenn. 2001) (Rule 9, § 24.3 "requires the imposition of costs in all disciplinary cases").

Section 19 of Rule 9 addresses reinstatement of an attorney's license, and mandates payment

of costs associated with reinstatement proceedings.

> **19.6.**   Petitions for reinstatement under this Rule *shall be accompanied by an advance cost deposit* in an amount to be set from time-to-time by the Board *to cover anticipated costs of the reinstatement proceeding*.   All advance cost deposits collected hereunder shall be deposited by the Board of Professional Responsibility with the State Treasurer; all such funds including earnings on investments and all interest and proceeds from said funds, if any, are deemed to be, and shall be designated as, funds belonging solely to the Board of Professional Responsibility. *Withdrawals from those funds shall only be made by the Board of Professional Responsibility to cover costs of reinstatement proceedings, and reimbursement of advance cost deposits not expended. . . .*

Sᴜᴘ. Cᴛ. Tᴇɴɴ. R. 9, § 19.6 (emphasis added).

Rule 9, § 8.5 addresses probation in lieu of a fixed period of suspension.   In cases where

"there is little likelihood that the respondent will harm the public during the period of rehabilitation

and where the conditions of probation can be adequately supervised," § 8.5 provides, "[t]he

[attorney]/respondent shall pay the costs associated with probation, including without limitation a

reasonable fee for the probation monitor." Sᴜᴘ. Cᴛ. Tᴇɴɴ. R. 9, § 8.5.

Importantly, § 18 of Rule 9 provides for the return of any costs paid in advance that have not

been earned:

> **18.5**   Effective Date of Order; Refund of Fees.

---

[5]   Rule 7 dealing with the licensing of attorneys, Article XIII (Formal Proceedings Before the Board), section 13.05 also includes a "Costs" provision, that provides: "The Board may require payment of or security for the costs and expenses of any hearing before the Board, in such a manner as it deems reasonably compensatory." Sᴜᴘ. Cᴛ. Tᴇɴɴ. R. 7, § 13.05.

Orders imposing disbarment, suspension, or transfers to disability inactive status are effective on a date ten days after the date of the order, except where the Court finds that immediate disbarment, suspension, or interim suspension is necessary to protect the public. The *respondent shall refund within ten days after entry of the order any part of any fees, expenses, or costs paid in advance that has not been earned or expended*, unless the order directs otherwise.

SUP. CT. TENN. R. 9, § 18.5 (emphasis added).

Among all the Rules for reimbursement of costs associated with proceedings before TBPR, there is a single reference to a monetary penalty other than restitution. Rule 9, § 20 requires an annual assessment from all Tennessee attorneys. Failure to pay the assessment results in summary suspension. SUP. CT. TENN. R. 9, § 20.3. "Any attorney suspended under the provisions of 20.3 above shall be reinstated without further order upon payment of all arrears and *a penalty of 20% of the amount due* from the date of the last payment to the date of the request for reinstatement." SUP. CT. TENN. R. 9, § 20.4 (emphasis added).

These cost assessment provisions collectively define a scheme intended to reimburse TBPR the costs it incurs administering attorney discipline in Tennessee. The Tennessee Rules provide specifically for the return of any costs paid in advance and not earned. SUP. CT. TENN. R. 9, § 18.5. There is no hint in the Tennessee Rules that assessment of costs is intended to serve any public purpose other than to defray the expenses of the licensing and disciplinary system.[6] SUP. CT. TENN. R. 9, § 24. The single reference to a monetary penalty appears in the unrelated context of an attorney's failure to pay the annual assessment. SUP. CT. TENN. R. 9, § 20.4

Costs under § 24.3 are assessed not only for disciplinary proceedings that end in disbarment, suspension or a lesser discipline, but also in the non-punitive context of disability inactive status.

---

[6]    Defendant TBPR was invited to offer any history or secondary authority that might bear on this issue. TBPR came forward with no such history, and this court's research uncovered none.

19

Disability inactive status results "[w]here an attorney has been judicially declared incompetent or involuntarily committed on the grounds of incompetency or disability or detained or placed in the custody of a center for the treatment of mental illness after a probable cause hearing[.]" Sup. Ct. Tenn. R. 9, § 21.1. Prior disciplinary proceedings or complaints are *not* a prerequisite to this status. An attorney may petition the court for self-imposed disability inactive status. Sup. Ct. Tenn. R. 9, § 21.2.

In contrast to the concerns of the Supreme Court in *Kelly*, there is no history of noninterference between bankruptcy law and the costs of attorney disciplinary proceedings. TBPR does not cite any pre-1978 decision of any court finding disciplinary costs nondischargeable in bankruptcy. Our research has failed to reveal any such case. It cannot be said that the fear of interference in state *criminal* proceedings that motivated the decision in *Kelly* has analogy to attorney disciplinary proceedings in Tennessee.[7] The Sixth Circuit recognized this logic in *Hughes* and refused to extend *Kelly* into the admittedly punitive context of a default judgment in civil litigation.

Cost assessments in attorney disciplinary proceedings in Tennessee are singularly intended to compensate the TBPR for actual pecuniary loss. Not unlike the debtor in *Hughes*, that the cost assessment here was entered in proceedings that punished Debtor for unprofessional conduct does not change its compensatory character. *See Hughes*, 469 F.3d at 479. The amount assessed against this Debtor was explicitly calculated to compensate the TBPR for costs of the proceedings,

---

[7] Several of the reported decisions dealing with the dischargeability of disciplinary costs characterize attorney disciplinary proceedings as "quasi-criminal" to explain reliance on *Kelly*. *See, e.g., In re Bertsche*, 261 B.R. at 438-39; *In re Cillo*, 159 B.R. at 348; *In re Haberman*, 137 B.R. at 295-96. This would be an odd characterization here given that assessment of attorney disciplinary costs in Tennessee is purely a creature of procedural rules promulgated by the Tennessee Supreme Court without hook in any provision of law enacted by a legislative body. The absence of analogy to criminal law is not fatal to application of 11 U.S.C. § 523(a)(7), but this disconnect punctuates why *Kelly* does not compel application of § 523(a)(7) in this context.

"including court reporter's expenses for appearances and transcription of all hearings and depositions, the expenses of the hearing panel in the hearing of the cause, and the hourly charge of Disciplinary Counsel in investigating and prosecuting the matter." Sup. Ct. Tenn. R. 9, § 24.3.

## Conclusion

The costs assessed in attorney disciplinary proceedings against the Debtor were discharged in his Chapter 7 bankruptcy. TBPR may not hold Debtor's law license hostage to payment of the discharged costs. Plaintiff's motion for summary judgment is granted; Defendant's motion for summary judgment is denied.

An appropriate Order will be entered.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

In re: WILLIAM D. LOVE,

          *Debtor.*

---

WILLIAM D. LOVE,

          *Plaintiff*,

    *v.*

THOMAS S. SCOTT, **Chairman,** TENNESSEE BOARD OF PROFESSIONAL RESPONSIBILITY, **in his official capacity,**

          *Defendant.*

Case No. 08-04970
Chapter 7

Hon. Keith M. Lundin

Adv. No. 09-00446

---

## APPEARANCES

---

Gregory Robert Atwood, Esq.
Atwood & McVay, LLP
6953 Charlotte Pike, Ste. 401
Nashville, TN 37209
615-354-1995
Attorney for Plaintiff

William F. McCormick, Esq.
Office of the Attorney General
Bankruptcy Division
PO Box 20207-0207
Nashville, TN 37202
615-532-8930
Attorney for Defendant

This Order has Been electronically
signed. The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.